IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GALDERMA LABORATORIES, L.P., and NESTLE SKIN HEALTH S.A., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| ACTAVIS LABORATORIES UT, INC., | ) ) ) |
| Defendant. | ) |

C.A. No.: 15-232-LPS

REDACTED - PUBLIC VERSION
FILED JULY 26, 2016

## ACTAVIS' UNOPPOSED MOTION TO REDACT
## JUNE 21, 2016 TELECONFERENCE TRANSCRIPT

Defendant Actavis Laboratories UT, Inc. ("Actavis"), by and through its undersigned counsel, pursuant to Rule 5.2 of the Federal Rules of Civil Procedure and this Court's Policy on the Electronic Availability of Transcripts of Court Proceedings, hereby moves to redact the transcript of the teleconference held on June 21, 2016 before Judge Leonard P. Stark in this action. On July 6, 2016, Actavis filed its Notice of Intent to Redact the transcript of the Telephone Conference held on June 21, 2016. (D.I. 139).

Actavis' proposed redactions are attached hereto as Exhibit A. An unredacted copy of the June 21, 2016 Teleconference Transcript is attached hereto as Exhibit B. (D.I. 135). As required under Local Rule 7.1.1, counsel for Actavis states that it has conferred with counsel for plaintiffs and has been informed that plaintiffs do not oppose Actavis' Motion to Redact.

Actavis requests redaction of the Teleconference Transcript because it relates to highly confidential business information of Actavis. The purpose of the June 21, 2016 teleconference was for the Court to resolve several discovery disputes in this case. The discovery disputes related, in part, to sensitive Actavis competitive and financial information and whether Actavis

was required to produce the information in the present case. For example, the disputes related to ███████████████████████████████████████████████████████████████████████████████████████████████. Portions of the teleconference transcript discuss this sensitive information in detail, which Actavis considers to be highly confidential business information. Actavis is producing, or has produced, this information to Plaintiffs as Highly Confidential – Outside Counsel Eyes Only pursuant to the Protective Order in this case. (D.I. 29). Publication of this information would provide Actavis' competitors with insight into its confidential business methods and commercial interests and may result in competitive harm to Actavis. Actavis therefore requests that this Court enter the redactions shown in Exhibit A and maintain portions of the transcript under seal.

The redactions Actavis proposes are consistent with controlling precedent in the Third Circuit. While the public has a common law right of access to judicial records, this access is not absolute. *See, e.g., Littlejohn v. BIC Corp.*, 851 F.2d 673, 677-78 (3d Cir. 1988). A judicial transcript may be redacted where "good cause" is established. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). To determine whether good case exists to seal a judicial transcript, courts apply a balancing test where the harm of disclosing information is weighed against the importance of disclosure to the public. *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 508 (D. Del. 2012) (citing *Pansy*, 23 F.3d at 787).

Good cause typically exists where the redacted information relates to "trade secrets or confidential technologies" and where the disclosure of "business information might harm a party's competitive standing." *See Littlejohn*, 851 F.2d at 677-78; *Mosaid Techs.*, 878 F. Supp. at 507-08; *In re Appleseed's Intermediate Hldgs., LLC*, 470 B.R. 289, 304 (D. Del. 2012). Similarly, courts have recognized that revealing strategic business planning information would

seriously harm the disclosing party's commercial interests. *Joint Stock Soc'y*, 104 F. Supp. 2d at 396.

Actavis requests redaction of the Teleconference Transcript because the confidential information is not generally known and its disclosure could harm Actavis' commercial interests. The proposed redactions are appropriate as a means of protecting those commercial interests. *See Littlejohn*, 851 F.2d at 678. For example, Actavis proposes to redact ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Exhibit A at 4, 8-10, and that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 10-12. Moreover, Actavis proposes to redact ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 14-15, 18-19.

Actavis would suffer competitive harm if its strategic information regarding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ were disclosed to the public and specifically to Actavis' competitors. *See Pansy*, 23 F.3d at 786. If this information were made available to Actavis' competitors—who, unlike Plaintiffs, would not be subject to the restrictions of the Protective Order—they would have the opportunity to strategically align their priorities in response and harm Actavis' ability to compete effectively. This information is not generally known or ascertainable through independent research. Rather, this confidential commercial information is the sort of material that courts have frequently redacted from transcripts. *See Mosaid Techs.*, 878 F. Supp. 2d at 510; *see also* Fed. R. Civ. P. 26(c)(1)(G) (providing for protective orders to prevent disclosures of "confidential research, development, or commercial information").

The information that Actavis seeks to redact is merely related to discovery disputes and whether specific types of information needed to be produced. The public interest in an open

3

transcript is generally to advance "trustworthiness of the judicial process, curbing judicial abuses, and providing the public with a more complete understanding of the judicial system...." *Id.* at 514. Actavis' competitive information is not relevant to the public's trust in the Court and is not necessary to understand the contours of this case. *See id.* at 509; 514. Therefore, the harm that would be suffered by Actavis if this information were released greatly outweighs any public interest in its disclosure. Accordingly, Actavis respectfully submits that its proposed redactions to the Teleconference Transcripts as proposed in Exhibit A are appropriate.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Robert M. Vrana*

Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Robert M. Vrana (No. 5666)
1000 North King Street
Wilmington, DE 19801
(302) 571-6681
msharp@ycst.com
jhiggins@ycst.com
rvrana@ycst.com

ROTHWELL, FIGG, ERNST & MANBECK, P.C.
E. Anthony Figg
Joseph A. Hynds
Lisa N. Phillips
Jennifer P. Nock
Aydin H. Harston
607 14th Street, N.W, Suite 800
Washington, DC 20005
(202) 783-6040

Dated: July 20, 2016         *Attorneys for Actavis Laboratories UT, Inc.*

# EXHIBIT A

```
                                                              1

12:46:09  1              IN THE UNITED STATES DISTRICT COURT

          2              IN AND FOR THE DISTRICT OF DELAWARE

          3                          - - -
             GALDERMA LABORATORIES, L.P., and
          4  NESTLE SKIN HEALTH S.A.,              : CIVIL ACTION
                                                   :
          5                 Plaintiffs,            :
             v                                     :
          6                                        :
             ACTAVIS LABORATORIES UT, INC.,        :
          7                                        : NO. 15-232-LPS
                            Defendant.
          8                          - - -

          9                       Wilmington, Delaware
                                  Tuesday, June 21, 2016
         10                       Telephone Conference

         11                          - - -

         12  BEFORE:        HONORABLE LEONARD P. STARK, Chief Judge

         13  APPEARANCES:                 - - -

         14
                     MORRIS NICHOLS ARSHT & TUNNELL, LLP
         15          BY:  MARYELLEN NOREIKA, ESQ.

         16               and

         17          PAUL HASTINGS, INC.
                     BY:  EVAN D. DIAMOND, ESQ., and
         18               VANESSA Y. YEN, ESQ.
                          (New York, New York)
         19
                              Counsel for Plaintiff
         20

         21          YOUNG CONAWAY STARGATT & TAYLOR, LLC
                     BY:  MELANIE K. SHARP, ESQ.
         22
                          and
         23

         24

         25                               Brian P. Gaffigan
                                          Official Court Reporter
```

**Page 2**

1  APPEARANCES (Continued):
2
3  ROTHWELL FIGG ERNST & MANBECK, P.C.
   BY: E. ANTHONY FIGG, ESQ.,
       LISA N. PHILLIPS, ESQ.
4      JENNIFER P. NOCK, ESQ.,
       JOSEPH A. HYNDS, ESQ., and
5      AYDIN H. HARSTON, ESQ.
       (Washington, District of Columbia)
6
           Counsel for Defendant
7
8
9
10                      - oOo -
11                  P R O C E E D I N G S
12       (REPORTER'S NOTE: The following telephone
13  conference was held in chambers, beginning at 12:45 p.m.)
14       THE COURT: Good afternoon, everybody. This is
15  Judge Stark. Who is there, please?
16       MS. NORIEKA: Good afternoon, Your Honor.
17       MS. SHARP: Good afternoon, Your Honor.
18       MS. NORIEKA: For the plaintiffs, Your Honor, it
19  is Maryellen Noreika at Morris Nichols. With me, I have
20  Vanessa Yen and Evan Diamond from the Paul Hastings firm;
21  and Ms. Yen is going to take the lead in discussing the
22  topics today.
23       THE COURT: Okay. Thank you very much.
24       MS. SHARP: Good afternoon, Your Honor.
25       MR. DIAMOND: Good afternoon.

**Page 3**

1        MS. SHARP: Good afternoon, Your Honor. For the
2  defendant, Melanie Sharp from Young Conaway. With me on the
3  line is Tony Figg, Joe Hynds. I believe Jen Nock and Aydin
4  Harston are also on the line as well as Lisa Phillips from
5  Rothwell Figg; and Lisa Phillips will take the lead on the
6  argument.
7        THE COURT: Okay. Thank you. Was there anybody
8  else trying to get in or is that everyone as far as you
9  know, Ms. Noreika?
10       MS. NORIEKA: That's it for us, Your Honor.
11  Thank you.
12       THE COURT: I do have my court reporter here with
13  me. For the record, it is the case of Galderma Laboratories,
14  LP versus Actavis Laboratories Civil Action 15-232-LPS. And
15  we set this time to discuss several discovery disputes all
16  raised by plaintiffs.
17       We'll go through them one by one, so we'll hear I
18  take it from Ms. Yen first and initially just on the issue of
19  discovery of the defendants' cost of development. Go ahead.
20       MS. YEN: Sure. Good afternoon, Your Honor.
21  This is Vanessa Yen.
22       So the first dispute concerning development
23  costs. This issue concerns Actavis's withholding of documents
24  concerning its development costs of its ANDA product and also
25  refusing to answer plaintiffs' interrogatories concerning the

**Page 4**

1  same on grounds of such information is irrelevant.
2        Plaintiffs disagree. This case is a little
3  bit of a different situation where Actavis has spent a
4  [REDACTED]
5  [REDACTED]
6  [REDACTED], then it is relevant to commercial success and as
7  is evidence that they are placing a high value on this.
8  And it's our position that so long as Actavis continues to
9  challenge plaintiffs' contention of commercial success,
10 it should not be permitted to withhold information and
11 documents concerning the development costs because it is
12 probative of commercial success.
13       THE COURT: All right. Have you found any cases
14 that have ordered production of development costs? We
15 looked at the *United Therapeutics* case you cited, and it
16 didn't seem to reference development costs.
17       MS. YEN: Right. While we haven't specifically
18 found development costs, we cited *United Therapeutics*
19 because it is a recent, you know, 2014 case where the
20 perception of a generic product was of high value, and that
21 was weighed in as something that the Court considered in
22 finding commercial success. That's where we are with *United
23 Therapeutics*.
24       THE COURT: Okay. Is there anything else,
25 Ms. Yen?

**Page 5**

1        MS. YEN: Yes, there is. Real quickly, there
2  is.
3        And to differentiate *United Therapeutics*, it
4  was a piece of evidence that was found to be probative. And
5  our position, we understand we are going to have to rely on
6  *Tolmar*, but in our read of the case, there was no specific
7  evidence saying -- there was no specific statement by the
8  Court saying that development costs are not relevant or that
9  development costs are not probative of commercial success.
10 So, in that case, it just seems that it was a case where the
11 generic was trying to copy the product and that fact, that
12 mere fact without more was insufficient to find commercial
13 success.
14       THE COURT: Okay. Thank you.
15       We'll hear from defendant, I believe
16 Ms. Phillips.
17       MS. PHILLIPS: Yes. Good afternoon, Your Honor.
18 Lisa Phillips for the Actavis defendant.
19       I guess I should start with addressing your
20 point about the *United Therapeutics* case.
21       We have said that we're not going to produce the
22 specific cost information because it is not relevant, but I
23 think that plaintiffs are not mentioning the fact that we've
24 produced information along the lines of the information that
25 was produced in the *United Therapeutics* case and was found

6

1  to be relevant. And you will see that information in
2  Exhibit 2 to our letter as the second page which ends in
3  Bates 458. And that document would show two very well known
4  economic measures of predicted profitability, net present
5  value, and internal rate of return. So plaintiffs do have
6  information relating to Actavis's characterization or
7  evaluation of the commercial opportunity with respect to the
8  generic product.
9      It's our position that the specific cost of
10 Actavis's development aren't relevant. And even if they
11 were relevant, their production is not proportional to the
12 needs of the case in light of the information that we have
13 already produced.
14     THE COURT: You are you also arguing it would be
15 unduly burdensome to produce that or is that not a concern
16 here?
17     MS. PHILLIPS: Well, I think it would probably
18 be unduly burdensome to go back and unredact all of the
19 documents that we have already produced and reproduce them
20 as unredacted documents.
21     THE COURT: So did you generally -- I'm
22 looking at what you referred me to from your production,
23 your attachment 2. Should I understand that generally what
24 you have done is provide the expected profit and revenue, I
25 suppose profit and/or revenue, but you are unwilling to give

7

1  the cost information or what exactly was the thinking in
2  what you redacted and what you provided?
3      MS. PHILLIPS: Well, just backing up one second.
4      As plaintiffs did just say in their argument,
5  they do have the information regarding our clinical costs,
6  and the only information that we redacted was other specific
7  costs. And if you look at that Exhibit 2 that you already
8  have, if you look at the very top of that second page, the
9  API costs are also listed in that document.
10     So we haven't withheld all costs, we just said
11 that we don't see a need for producing the specific overall
12 costs from start to finish because we feel that information is
13 irrelevant, and even if it was, it's not proportional to the
14 needs of the case.
15     THE COURT: So you have produced some costs but
16 not overall costs and you have produced, on the plus side,
17 is this revenue information or profit information or is it
18 both?
19     MS. PHILLIPS: It's predicted profitability.
20 The net present value and internal rate of return are both
21 predicted profitability measures.
22     THE COURT: All right. And if I were to order
23 the relief that the plaintiffs re seeking, would more be
24 involved than unredacting portions of what you have already
25 produced?

8

1      MS. PHILLIPS: Yes. We might have to collect
2  other information. I am not certain, one way or the other,
3  but my thought is it probably would entail retrieving more
4  information.
5      THE COURT: Roughly, what is your understanding
6  as to how much, how many documents would need to be
7  unredacted? How big of an undertaking is that likely to be?
8      MS. PHILLIPS: Well, we would have to review all
9  of the documents to find the redactions specifically. And
10 I'm not sure how many of the documents that we have produced
11 have redactions of cost information.
12     THE COURT: Okay. Is there anything else,
13 Ms. Phillips?
14     MS. PHILLIPS: No, I don't think so.
15     THE COURT: All right. Ms. Yen, do you want to
16 respond.
17     MS. YEN: Yes, Your Honor.
18     So we would just like to reiterate in this case,
19 ███████████████████████████████████████
20 ███████████████████████████████ Actavis's
21 part, and we understand they have redacted this information,
22 and initially it is irrelevant, and we're not asking them to
23 go back and unredact all of their documents because we do
24 understand that would be difficult.
25     As a compromise, plaintiffs would accept a

9

1  summary document from Actavis that provides a full
2  accounting of their development costs. That is something
3  that we feel that is fair, Your Honor, given that commercial
4  success is in this case, and we do understand that they
5  have ████████ on this product. That would provide
6  plaintiffs with some measure of their development costs.
7      THE COURT: Well, why is there inadequacy in
8  what you have already been given? As has been explained to
9  me, evidently you have the clinical costs and you have the
10 API costs, all of which appear to be significant, and you
11 have their predicted profitability. Why do you need more
12 than that?
13     MS. YEN: Well, Your Honor, it is our position
14 that we really don't understand we have all their costs. I
15 mean Ms. Phillips is pointing to a document dated 2013 with
16 these costs, but we don't know -- for this case, you know,
17 we want to know what are the development costs entirely. So
18 this 2013 document is representative of -- this along with
19 the clinical costs is representative of the representative
20 costs. That is something different, Your Honor. But we
21 understand there is a significant cost here involved, and
22 there should be significant evidence of high value from
23 Actavis's part, and it is difficult for us to go forward and
24 proceed with this without having this piece of evidence.
25     THE COURT: All right. And your argument that

10

1   this case is different from the ordinary ANDA case is that
2   [redacted] ; is that
3   right?
4   MS. YEN: Yes, Your Honor. We understand that
5   they have had third parties, have hired third parties to
6   [redacted]
7   [redacted]
8   [redacted] We know that they, based
9   on some of the documents that we have seen, that they have
10  hired different third parties for their trials, and so we
11  suspect that there may be costs involved in there as well,
12  but we're not certain, Your Honor.
13  THE COURT: All right. Thank you.
14  MS. YEN: And there may be other -- sorry, Your
15  Honor.
16  THE COURT: No, that's okay. Was there anything
17  else you wanted to add?
18  MS. YEN: No. That's it, Your Honor.
19  THE COURT: All right. Ms. Phillips, would
20  you speak just briefly to the purported distinction that
21  here [redacted]
22  [redacted] And also,
23  do you have any reaction to the proposed compromise?
24  MS. PHILLIPS: Well, first of all, I don't think
25  that that is unusual at all. What is at issue here is a

11

1   bioequivalency study which is like pretty much all other
2   cases. And plaintiffs haven't really offered any information
3   supporting their claims [redacted]
4   [redacted]
5   And I think that sort of the base here is the
6   value of what we thought was the value of the product is
7   reflected in the documents that we have already produced.
8   We're just not sure why the specific costs are relevant over
9   the information that has already been produced to plaintiff.
10  THE COURT: And the proposed compromise whereby
11  I would order you to provide a summary document, any thoughts?
12  MS. PHILLIPS: The summary document would
13  require us to have every department report the information
14  for this product. So it would be particularly hard to
15  gather all of that information and put it into one document
16  when the information really at base isn't relevant.
17  THE COURT: All right. Thank you.
18  Ms. Yen, any last word on this one?
19  MS. YEN: Your Honor, just we want to point out
20  that without Actavis providing us with this information,
21  plaintiffs believe that we can't fairly assess the basis for
22  their claims on profitability. So if we could even have -- I
23  mean we're trying to work with Actavis here on a compromise,
24  but we will defer to Your Honor's judgment.
25  THE COURT: All right. And what I understood

12

1   [redacted]
2   [redacted]
3   [redacted]. Did I misunderstand you?
4   MS. YEN: Yes. [redacted]
5   [redacted]
6   [redacted]
7   [redacted]
8   [redacted]
9   [redacted]
10  THE COURT: All right. Thank you. Well, I'm
11  going to grant the relief sought by the plaintiffs on this
12  one. So the defendant is hereby ordered to produce the
13  documents sought and the response to the interrogatories.
14  As I understand, that what that effectively is
15  going to mean is a lot of unredacted or previously redacted
16  information. It may require more than that as well. That
17  is unclear.
18  Nonetheless, I'm persuaded the information is
19  within the broad scope of relevance. It's reported to me,
20  represented to me, and I accept the representation that the
21  plaintiffs understand that the defendant here [redacted]
22  [redacted]
23  [redacted]
24  [redacted] To the extent that is true, I think it
25  would be probative of the high value that the defendant

13

1   places on its ANDA product as a whole, all of which would
2   go to commercial success and potentially be probative of
3   nonobviousness.
4   I recognize defendants have already produced
5   some of the information, but I think it's fair for the
6   plaintiffs to be able to understand the full context as
7   it is trying to do, and I'm not persuaded that the burden
8   here is undue, nor am I persuaded that the discovery is
9   disproportionate to the needs of the case.
10  So that is the ruling on the first point. Let's
11  move on to the second issue, which is the plaintiffs are
12  seeking factual information regarding Actavis's potential
13  launch date for its product. And we'll hear first from the
14  plaintiffs again.
15  MS. YEN: Yes, Your Honor. So for the second
16  issue, concerning potential launch date, Actavis has
17  redacted information concerning their launch dates in all
18  their documents, meaning we have, we received the business
19  documents, for example, that have projected forecasts but
20  all the days were redacted. We don't even know what year
21  these forecasts are for. It's difficult for us to put these
22  forecasts into context, and it is making it difficult for us
23  to take discovery.
24  We understand Actavis is refusing to provide
25  their launch date because they're saying it is privileged

### 14

1  information. Frankly we don't understand, Your Honor, how
2  it can be privileged, at least privileged such that on all
3  these business documents it makes it incomprehensible.
4      We did look to the redactions for those
5  documents and their priv. log, and it says, the priv. log
6  says it is reflecting legal advice but no lawyer is named
7  and the custodian of these documents are not an attorney
8  either.
9      So, right now, plaintiffs are faced with this
10 position where we have Actavis's recommendation, but it
11 doesn't really make sense to us and we're just trying to
12 understand.
13     THE COURT: All right. Thank you.
14     Ms. Phillips.
15     MS. PHILLIPS: Yes. So with respect to the
16 projected launch dates, [REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]

### 15

[REDACTED] Down at the end, it's pointed
3  out that she looked at the privilege log and determined
4  none of the people that were on several of the documents
5  that they were discussing were attorneys, but the cases
6  do say that the privilege log doesn't always reflect the
7  name of an attorney with respect to these documents, but
8  the communication of the legal determination that the
9  attorneys have made to other non-attorneys in the corporation
10 disseminated that legal advice so that other corporate
11 employers act accordingly is also protected. And that is
12 the *King Drug* case that Actavis cited.
13     So I think that just the basis of how this
14 information is determined by whom and the legal analysis
15 that is required to make the determination means that it is
16 privilege different than the information that was discussed
17 in the case as plaintiffs cited.
18     THE COURT: All right. But you are the one
19 asserting privilege so the burden is on you. But given the
20 absence of that information in the privilege log, have you
21 done anything else to convey that information and to meet
22 your burden of showing privilege?
23     MS. PHILLIPS: I'm sorry. I didn't understand
24 your question.
25     THE COURT: The burden of asserting privilege is

### 16

1  on the party asserting privilege, in this case, your client.
2  Correct?
3      MS. PHILLIPS: That's right.
4      THE COURT: And you grant that if we look at
5  your privilege log, we can't see the basis for the assertion
6  of privilege; correct?
7      MS. PHILLIPS: That is correct.
8      THE COURT: So my question is what else have you
9  done in order to meet your burden to show the basis for the
10 privilege?
11     MS. PHILLIPS: Well, during the meet-and-confer
12 process, we explained to the plaintiff that the information
13 was determined by an attorney and was determined based on
14 the legal analysis. So we had provided that information
15 during the meet-and-confer process.
16     THE COURT: Have you identified for them the
17 attorney and when it may have been done to give them some
18 sense as to why in this case that information should be
19 viewed as legal advice as opposed to a business decision?
20     MS. PHILLIPS: We can update plaintiffs on that,
21 but we haven't yet given them that information.
22     THE COURT: I'm having a little trouble
23 understanding the defendant's position. It seems to be that
24 a launch date could be privileged or alternatively may not
25 be privileged and it turns on the specifics, I take it, as

### 17

1  to who calculated it and for what purpose. Is that the
2  position?
3      MS. PHILLIPS: Yes, and that is how I read the
4  cases cited by both parties here.
5      THE COURT: All right. Is there anything else,
6  Ms. Phillips?
7      MS. PHILLIPS: No, Your Honor.
8      THE COURT: Okay. Ms. Yen, any response?
9      MS. YEN: Yes, Your Honor. I think ultimately
10 the issue plaintiffs have is that with their launch date
11 redactions, we're not asking for legal advice as what the
12 lawyer did, we're just asking for dates. And this goes to
13 commercial success which is being challenged by Actavis
14 because we can't interpret their forecast if they're
15 redacting out the dates for these forecasts because
16 presumably they indicate the launch date. And if they're
17 disputing commercial success, we just don't see how we can
18 make sense of these business documents and go forward
19 with this discovery, especially depositions. We intend
20 to -- you know, we might use the documents as an exhibit for
21 depositions or at least rely on it. It's difficult to put
22 it into context, Your Honor. So we're just trying to get
23 an understanding of these business documents which we do
24 believe are relevant to the case here. But without that
25 information, and without being told who the attorneys are,

## Page 18

1 we just don't understand why this information is being
2 withheld on privilege.
3     THE COURT: All right. Thank you.
4     Ms. Phillips, is there anything else on this
5 one?
6     MS. PHILLIPS: Sure. I had a few things
7 actually.
8     With respect to the information that Ms. Yen
9 just provided about documents which alleged redacted dates,
10 in our projection, I think that, it is my understanding that
11 the only date that is actually redacted is the actual launch
12 date.
13     I would also point out that if these other dates
14 are in fact redacted, I don't know about that, but if they
15 are, it seems to be information that you could obtain in a
16 deposition. And I would point out that they have noticed
17 depositions of our marketing people and that information
18 would probably come out during those depositions.
19     But other than that, we would agree to provide
20 an affidavit ███████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████
24     THE COURT: All right. ██████████████
███████████████████████, I'm still having trouble

## Page 19

1 understanding why it would be privileged information. Do you
2 want to help me out on that?
3     MS. PHILLIPS: Well, as I said earlier, the
4 determination, ███████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████ I'm not sure how to describe it
9 other than that.
10     THE COURT: All right. Thank you.
11     Ms. Yen, is there anything else?
12     MS. YEN: Yes, Your Honor. So Actavis just
13 said this information could possibly be obtained in a
14 deposition, but the forecast, it's all redacted and we
15 don't -- it's fully redacted, and we don't see how we can
16 take the deposition of documents that we can't read.
17     We're really just trying to understand the
18 forecasts and these business numbers. We, again, believe
19 this goes to commercial success. And we think that Actavis
20 should provide us with their dates for these forecasts if
21 they can't name the attorneys or let us know why it is
22 privileged.
23     THE COURT: All right. Thank you. On this one,
24 I am siding again with the plaintiffs, and I'm granting
25 their request which I understand to be a request that the

## Page 20

1 defendant be ordered to provide the factual information
2 regarding its potential launch date.
3     The plaintiffs are not seeking, and I'm not
4 ordering, that the underlying legal analysis or communications
5 about that legal analysis, if there are any, have to be
6 disclosed to the plaintiffs. I'm not saying that. It may
7 well be as simple as simply providing the date to the
8 plaintiff. But I'm persuaded, and, in fact, this part I don't
9 think is in dispute, that the information is relevant. And
10 I'm not persuaded that the information sought is privileged.
11     The burden in this case is on the defendant to
12 provide the basis for the assertion of the privilege. That
13 burden is not satisfied by the privilege log here, nor does
14 it sound to me as if the burden was met in the meet and
15 confer. It may be that there was some other way going
16 forward that that burden could be met, but I don't see any
17 reason to provide the defendants yet another opportunity to
18 meet a burden that I'm sure they were fully aware of.
19     I'm partly informed in this conclusion by my
20 understanding that the financial forecast information, which
21 is relevant for reasons including what we discussed in the
22 first part of the call today, evidently cannot really be
23 sensibly understood without knowing the launch date given
24 that that date and other dates are redacted.
25     So for all those reasons, I am ordering the

## Page 21

1 relief sought by the plaintiffs on this one.
2     Now, in our remaining brief time left, we can
3 talk a bit about the issues that Galderma raises in its part
4 3, but it seemed from the record that there had not been a
5 complete meet and confer and that none of these issues are
6 necessarily ripe for me to do anything about.
7     What is the plaintiffs' position on that at this
8 point?
9     MS. YEN: Your Honor, this is Vanessa again.
10     Concerning that point, before the parties had
11 to submit their briefing to the Court, plaintiffs did ask
12 Actavis for a meet and confer after our letters were out on
13 these remaining issues, and Actavis refused to meet and
14 confer and said it needed time to look into these issues.
15     We were open and ready to meet and confer with
16 them, Your Honor. And if Your Honor wants to hear these
17 issues, we're ready to discuss them as well. We can be
18 quick. But it is getting close to the end of discovery.
19 Today is the 21st of June, and the end of fact discovery is
20 July 21st, so it is in one month.
21     THE COURT: What is the defendant's view? Are
22 you open to a meet and confer at this point or is that not
23 something you are open to?
24     MS. PHILLIPS: Well, I think -- just backing up
25 for one moment. I think that we didn't refuse a meet and

```
                                                    22
 1  confer. We said that we were investigating the issues and
 2  that we would report the results of the investigation when
 3  we could, but because the investigation was ongoing, they
 4  did ask for the meet and confer almost two days after they
 5  gave us, they sent us the June 6th letter. So we didn't
 6  really have time to do a full investigation of all of the
 7  issues they brought up in the June 6th letter in 48 hours,
 8  and they wanted to meet and confer on the morning of the
 9  second day, not even the 48 hours. So it is not that we
10  refused to do the meet and confer, it is that we said we
11  just thought it was premature because we were investigating
12  the issue.
13           Then I guess the other point that I would like
14  to make is that we sent a letter fully addressing all of
15  the issues that they had raised in their June 6th letter on
16  Friday, as we said that we would do in the three page letter
17  as we sent to the Court last week.
18           So at this point, we're not really sure what
19  other issues need to be discussed on a meet and confer, but
20  we would be happy to do so if there are other remaining
21  issues after the report provided in our June 17th letter.
22           THE COURT: All right. Well, I don't view these
23  issues as ripe for me to do anything about at this point.
24  It sounds as if there was not an adequate meet and confer
25  before the letters were submitted to me. Defendants did
```

```
                                                    23
 1  their best to respond. Nonetheless, in their letter to me
 2  they represent that they have written yet another letter to
 3  the plaintiffs which defendant believes addresses the
 4  plaintiffs' concerns.
 5           The parties should now meet and confer and see
 6  if you have any disputes that you can, through good faith
 7  efforts, resolve on your own. I'm hopeful that you will
 8  find you are able to do that. So I think that covers
 9  everything that is ripe for the Court today.
10           Is there anything further from plaintiffs?
11           MS. YEN: No, Your Honor. Thank you.
12           THE COURT: Is there anything further from the
13  defendant?
14           MS. PHILLIPS: No, Your Honor. Thanks.
15           THE COURT: Thank you all very much. Good-bye.
16           (Telephone conference ends at 1:22 p.m.)
17
18       I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.
19

20              /s/ Brian P. Gaffigan
                Official Court Reporter
21              U.S. District Court
22
23
24
25
```

Exhibit B is redacted in its entirety